UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN THE MATTER OF<br><br>CENTREDALE MANOR SUPERFUND SITE<br><br>Verified Petition of<br><br>Emhart Industries, Inc.<br><br>To perpetuate the testimony of witnesses | Civil Action No.: Misc. 03-114 |

**OBJECTION TO PETITION TO PERPETUATE TESTIMONY**

Respondents, Teknor Apex Company; American Mineral Spirits Company; CNA Holdings, Inc.; Ciba Specialty Chemicals, Inc.; Cranston Print Works Company; Eastern Color & Chemical Co.; GM Holdings, Inc.; Organic Dyestuffs Corporation; Sequa Corp.; The Original Bradford Soap Works, Inc.; and Union Oil Company of California, by and through counsel for Teknor Apex Company and on behalf of all other listed Respondents, hereby object to Petitioner Emhart Industries, Inc.'s ("Emhart") Verified Petition to Perpetuate Testimony (the "Petition") and move for an Order denying the deposition of additional witnesses.

On September 14, 2006, Emhart filed its Petition. The Petition seeks to depose nine witnesses and purportedly gives notice of its desire to do so to some thirty entities.[1] The Petition falls far short of meeting the requirements under Fed. R. Civ. P. 27. As discussed more fully below, the Petition must be denied because: (1) Emhart fails to make an unequivocal showing that it expects to be a party to an action; (2) Emhart fails to demonstrate that it has a

[1] The Petition also seeks to take these depositions on only eleven (11) days' notice. Such notice is insufficient and Respondents object to such limited notice.

particularized need to perpetuate the deposition testimony; and (3) Emhart seeks to use this Rule 27 Petition as a vehicle to engage in discovery to determine when and if it should file suit against Respondents.

## I. ARGUMENT

### A. Emhart Has Failed To Demonstrate That It Expects To Be A Party To An Action As Required Under Rule 27

Rule 27(a)(1) requires a petitioner to show that that it "expects to be a party to an action cognizable in a court of the United States but is presently unable to bring it or cause it to be brought." Fed. R. Civ. P. 27(a)(1). The allegation that the petitioner expects to be a party to an action must be unequivocal, and there must be a factual showing sufficient to support an expectation of action. Wright, Miller & Marcus, Federal Practice and Procedure, § 2072 at 656. Emhart's Petition demonstrates that precisely the opposite is true. The Petition states that "there is a reasonable prospect of settlement with most or all" Respondents, and that only "in the absence of a global settlement" will Emhart "be engaged in subsequent litigation with certain of the" Respondents. See Petition at 2. Thus, the Petition is facially insufficient under Rule 27. See In re Application of Eisenberg, 654 F.2d 1107 (5th Cir. 1981) (A person contemplating litigation has no absolute entitlement to early discovery under Rule 27). See also Moore's Federal Practice § 27.13[2], Wright, Miller & Marcus, Federal Practice and Procedure, § 2072 at 657 (citing Rozek v. Christen, 153 Colo. 597, 605-606, 387 P.2d 425, 430 (Colo. 1963) (petition alleging that petitioner expected to be plaintiff in an action "if a complaint is filed," was equivocal, and insufficient to permit use of Rule 27)). The Rhode Island Supreme Court has reached the same conclusion. Myles v. Women and Infants Hospital, 504 A.2d 452 (R.I. 1986).

Notably, and to its credit, Emhart has agreed to use its "best efforts to prevent institution of third party claims against signatories to the Cost Sharing Agreement." See Letter from Swidler Berlin Shereff Friedman, LLP attached as Exhibit A. Many of the Respondents were signatories to the Cost Sharing Agreement. See Cost Sharing Agreement attached as Exhibit B. Also, a January 2004 "Tolling Agreement" agreed to by Emhart and Respondents provides that the parties will attempt to resolve any dispute without resort to litigation. See Tolling Agreement attached as Exhibit C. (The Tolling Agreement was subsequently amended to extend to the 60th day after EPA issues the ROD. The ROD has not been issued.)

In sum, Emhart's Petition should be denied because Emhart has failed to show that it unequivocally expects to be party to an action as required under Rule 27(a)(1).

### B. Emhart's Petition Seeks To Engage In Wholesale Discovery Prior To Filing a Complaint In Direct Contravention Of The Rationale Behind Rule 27

Emhart's Petition seeks to depose nine witnesses and purports to provide notice to some thirty entities.[2] This Petition does not seek to perpetuate testimony to "prevent a failure or delay of justice." Fed. R. Civ. P. 27(a)(3). To the contrary, Emhart seeks to engage in discovery before filing suit in clear contravention of the rationale behind Rule 27. Courts generally agree that to allow Rule 27 to be used for the purpose of discovery before an action is commenced to enable a person to fish for some ground for bringing suit would be "an abuse of the rule." Wright, Miller & Marcus, Federal Practice and Procedure, § 2071 at 651-652. See also Sawyer v. E.I. du Pont de Nemours, 2006 U.S. Dist. LEXIS 44026 (S.D. Tex. June 28, 2006) (where purpose of Rule 27 petition was to investigate a potential claim, not to perpetuate testimony, Federal Rule 27 not implicated); In re Boland, 79 F.R.D. 665, 667 (D.D.C. 1978) (The purpose

[2] Fed.R. Civ. P. 27(a)(2) requires that the Petition shall be served in the manner provided in Rule 4. Emhart did not serve the Petition in accordance with this requirement and for this reason alone the Petition should be denied.

of Rule 27 is to perpetuate testimony relating to an actual claim which may "otherwise become unavailable before the complaint could be filed.").

Significantly, Emhart seeks to depose some nine individuals, all current or former employees of New England Container Company, Inc. ("NCC"). Emhart will elicit testimony concerning the nature and operation of NCC, a description and history of its customer base as well as the scope of those relationships in an obvious attempt to support a subsequent lawsuit when and if Emhart decides to file an action against Respondents. There can be no doubt that Emhart's purpose in filing this Petition is to gather evidence to support a complaint against Respondents. Such tactics are clearly prohibited under Rule 27. See In re Yancey L.L.C., 2000 U.S. Dist. LEXIS 15204 (E.D. La Oct. 9, 2000) (Rule 27(a) was not designed as an aid to help counsel obtain facts to frame a complaint); Ky. Cmtys. Econ. Opportunity Council, Inc. v. Admin. for Children & Families, 2005 U.S. Dist. LEXIS 12263, (E.D. Ky June 17, 2005) (concluding that a Rule 27 petition cannot be used for the purpose of ascertaining facts to be used in drafting a complaint).

Emhart's true motivation is also evident by its failure to notice these depositions in two other lawsuits concerning the Site now pending, where it is a Plaintiff. By its own admission, the depositions requested in this Petition will also be used in those actions. See Petition at 2. Thus there is no basis for seeking Rule 27 relief at this juncture and Emhart's attempts to do so are improper.

### C. Emhart Has Failed To Make A "Particularized Showing" For Perpetuating Testimony

Emhart must also establish under Fed. R. Civ. P. 27(a)(3) that there is a danger that without Rule 27 relief, the deposition testimony would be lost. Emhart similarly fails to meet this requirement. Courts have stated that, in order to satisfy this requirement, a petitioner must

"make a particularized showing that the testimony needs to be taken in advance of the contemplated action." In re Checkosky, 142 F.R.D. 4, 7 (D.D.C. 1992).

In the instant case, there has been no particularized showing that testimony or other evidence is likely to be lost prior to the filing of an action on behalf of Emhart. Emhart claims that "a number of witnesses in this matter have passed away, many of the potential witnesses are quite advanced in years, and some are also in poor health." See Petition at 2. These alleged justifications do not demonstrate a concrete danger of loss as required under Rule 27. See In re the Application of Numerous Parties for the Perpetuation by a Deposition of Testimony, 1997 U.S. App. LEXIS 4066 (9th Cir. March 4, 1997) ("particularized showing" made where witnesses are in eminent danger of death or serious illness); In re Petition of Banks, 1993 U.S. Dist. LEXIS 17109 (N.D. Ill. Dec. 3, 1993) (Petitioner's concern that some of the adverse parties may pass away held to be too generalized to satisfy a showing that the testimony sought was in any danger of being lost by delay if depositions were not immediately taken); In re Petition of Delta Quarries and Disposal Inc., 139 F.R.D. 68 (M.D. Penn. 1991) (applicant required to prove witnesses' health was so grave that there was a likelihood of loss of his testimony). Consequently, Emhart has failed to make a particularized showing that the requested deposition testimony will be lost if it is not granted Rule 27 relief.

### D. Emhart's Rule 27 Petition Stands In Sharp Contrast To Respondent's Prior Filing

Emhart will no doubt argue that its current Petition is no different than the Rule 27 petition some of the Respondents filed and that because this Court granted that petition, it should extend the same relief to Emhart. However, even a cursory review of the two petitions reveals substantial differences in the justifications for the requested relief. Respondents' petition was a focused and tailored effort to obtain the deposition testimony of one witness whose testimony

was explained at length to be critical to the respective rights and liabilities of the parties in connection with EPA allegations. Moreover, the deposition testimony there was in significant jeopardy in light of the witness's on-set of dementia. This stands in sharp contrast to Emhart's generalized allegations and broad scale efforts to engage in pre-complaint discovery by developing a factual record through the depositions of nine individuals. Therefore, it is of no consequence that Respondents were granted relief under a prior Rule 27 petition.

## II. CONCLUSION

Emhart has failed to satisfy the requirements of Fed. R. Civ. P. 27. Consequently, its petition for an order to depose additional witnesses should be denied.

Providence, Rhode Island
September 28, 2006

Respectfully submitted,
NIXON PEABODY LLP

/s/ Gregory L. Benik
Gregory L. Benik (1515)
One Citizens Plaza
Providence, RI 02903
(401) 454-1000
Fax: (401) 454-1030
gbenik@nixonpeabody.com
Counsel for Teknor Apex Company and
On behalf of All Respondents

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th of September, 2006, an exact copy of the within Objection to Petition to Perpetuate Testimony was electronically mailed to the Electronic Case Filing system of the United States District Court for the District of Rhode Island. Notice of this filing, as indicated in the Notice of Electronic filing, will be sent via e-mail to the following:

**David B. Graham** (dbgraham@kaufcan.com)
**R. Howard Grubbs** (hgrubbs@wcsr.com)
**Stacey P. Nakasian** (snakasian@duffysweeney.com; ehanson@duffysweeney.com)
**James W. Ryan** (jwr@psh.com; emw@psh.com)
**Craig M. Scott** (cscott@duffysweeney.com)

A true copy of this filing will be sent via mail, first class, postage prepaid to the parties listed below.

/s/ Gregory L. Benik

ANPC Associates
Limited Partnership
**Registered Agent:**
Prentice-Hall Corp. System
222 Jefferson Blvd., Suite 200
Warwick, RI 02888

Warren Anthony Fitch, Esq.
Jerome C. Muys, Jr., Esq.
Bingham McCutchen, LLP
2020 K Street, NW
Washington, DC 20006

ADP Marshall, Inc.
c/o Kirsten W. Ulbrich, Esq.
Adler Pollock &
Sheehan, P.C.
One Bank Boston Plaza
Providence, RI 02903

A. Harrison & Co.
c/o H. Allen Harrison
35 Hurdis Street
North Providence, RI 02904

Allendale Mill Associates,
Limited Partnership
**Registered Agent:**
Charles F. Rogers, Jr., Esq.
2800 Financial Plaza
Providence, RI 02903

James Aukerman, Esq.
James V. Aukerman
& Associates, LLC
60 South County
Commons Way
Wakefield, RI 02979

Bernard V. Buonanno, Sr.
c/o Deming E. Sherman, Esq.
Edwards & Angell, LLP
2800 Bank Boston Plaza
Providence, RI 02903

Estate of Joseph Buonanno
c/o Deming E. Sherman, Esq.
Edwards & Angell, LLP
2800 Bank Boston Plaza
Providence, RI 02903

Brook Village Associates
Limited Partnership
Howard J. Castleman, Esq.
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116

Brown & Sharpe
Manufacturing Co.
n/k/a Hexagon Metrology, Inc.
Precision Park
2000 Frenchtown Rd.
North Kingston, RI 02852

Leonard A. Pezza
100 Irons Avenue
Johnston, RI 02919

Cal Chemical Corp.
Charles A. Lamendola
592 Arnold Rd.
Coventry, RI 02816

Cardinal Chemical
n/k/a Eastern Resins Corp.
c/o Steven I. Rosenbaum, Esq.
30 Exchange Terrace
Providence, RI 02903

Centerdale Manor Associates
Laurie Burt, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210

CNC Chemical Corp.
c/o Bruce Monger, President
20 Privilege Street
Woonsocket, RI 02895

Duro Finishing
n/k/a Duro Industries, Inc.
110 Chase Street
Fall River, MA 02724

Eastern Smelting & Refining
Co. n/k/a Refinity Corp.
Mark Kalpin, Esq.
Hale and Dorr
60 State Street
Boston, MA 02109

Efros Barrel Company
18 Imperial Place, Suite 3G
Providence, RI 02903
**Also:**
179 Wayland Avenue,
2nd Floor
Providence, RI 02906

Eli Lilly & Company, Inc.
Jerome I. Maynard, Esq.
Dykema Gossett
55 East Monroe Street
Suite 3050
Chicago, IL 60603-5709

G.M. Gannon Co., Inc.
n/k/a Bright Star Corp.
c/o Robert H. Breslin, Jr.
222 Jefferson Blvd., Ste 300
Warwick, RI 02888

George Mann & Co.
n/k/a Univar USA, Inc.
Leslie R. Schenck, Esq.
Garvey Schubert Barer,
18th Floor
Second & Seneca Building
1191 Second Avenue
Seattle, WA 98101-2939

New England Container
Company, Inc.
Kirsten Etela, Esq.
Robinson & Cole LLP
Financial Center
695 East Main Street
Stamford, CT 06904

Sterling Winthrop
n/k/a Sanofi-Synthelabo, Inc.
Richard F. Ricci, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ 07068

T.H. Baylis Company
n/k/a THBC, Inc.
Scott Junkin, Esq.
234 Church Street, 9th Floor
New Haven, CT 06510-1819

Mill at Allendale
Condominium Association
Frank A. Lombardi, Esq.
1000 Smith Street
Providence, RI 02908

United States Environmental
Protection Agency, Region 1
Office of the Regional Counsel
c/o Eve Vaudo, Esq.
One Congress Street
Boston, MA 02114-2023

U.S. Oil
c/o Northeast Products Co.
Pasco Gasbarro, Jr.
1500 Fleet Center
Providence, RI 02903

Synthron, Inc.
f/k/a Synthron Chemicals, Inc.
United States Corporation
Company
2711 Centerville Road
Suite 400
Wilmington, DE 19808

Richard A. Sherman, Esq.
Edwards & Angell, LLP
2800 Bank Boston Plaza
Providence, RI 02903

Universal Chemicals
**Registered Agent:**
Jerry Kaplan
164 Eileen Drive
Cedar Grove, NJ 07009

Daniel S. Crocker
Brooks/Eckerd Pharmacy
50 Service Avenue
Warwick, RI 02886

Tanner Industries, Inc.
**Registered Agent:**
CT Corporation System
10 Weybosset St.
Providence, RI 02903

John F.X. Peloso, Jr., Esq.
Robinson & Cole, LLP
695 East Main Street
Stamford, CT 06904-2305

Dytex Chemicals
Charles S. Grossman
1280 High Street
Central Falls, RI 02863

Kraus Chemical Company
156 Valley Street
East Providence, RI 02914
**Registered Agent:**
Carol E. Najarian
1140 Reservoir Avenue
Cranston, RI 02920
**President:**
Martin A. Kraus
120 Dellwood Road
Cranston, RI 02920

Lubrx Products, Inc.
**Registered Agent:**
Doloros A. Audet
8 Darby Dr.
Mansfield, MA 02048

Malden Mills Industries, Inc.
Kathleen Potter, Esq.
46 Stafford Street
Lawrence, MA 01841

Plymouth Rubber
Company, LLC
Christopher P. Davis, Esq.
Goodwin Procter
53 State Street
Exchange Plaza
Boston, MA 02109
**Registered Agent:**
Maurice Hamilburg
104 Revere St.
Canton, Ma 02021

Rhode Island
Chemical Corporation
**Registered Agent:**
Thomas C. Plunkett
91 friendship Street
Providence, RI 02903

Colburn T. Cherney, Esq.
Ropes & Gray
One Franklin Sq.
1301 K St., NW, Ste. 800 East
Washington, DC 20005

# EXHIBIT A

# SWIDLER BERLIN SHEREFF FRIEDMAN, LLP

THE WASHINGTON HARBOUR
3000 K STREET, NW, SUITE 300
WASHINGTON, DC 20007-5116
TELEPHONE (202) 424-7500
FACSIMILE (202) 424-7643
WWW.SWIDLAW.COM

JEROME C. MUYS, JR.
TELEPHONE (202) 424-7547
FACSIMILE (202) 424-7643
JCMUYS@SWIDLAW.COM

NEW YORK OFFICE
THE CHRYSLER BUILDING
405 LEXINGTON AVENUE
NEW YORK, NY 10174
TELEPHONE (212) 973-0111
FACSIMILE (212) 891-9598

January 20, 2004

**VIA FACSIMILE AND REGULAR MAIL**

Jean Warshaw, Esquire
177 East 87th Street
Suite 201C
New York, NY 10128

Michael Donegan, Esquire
Donegan & Associates
1600 Financial Plaza
Providence, RI 02903

Re: Centredale Manor Restoration Project Superfund Site

Dear Ms. Warshaw and Mr. Donegan:

I have been authorized by Brook Village Associates Limited Partnership, Centredale Manor Associates Limited Partnership, Emhart Industries, Inc. and New England Container Co., Inc. (the "Performing Respondents") to send you the enclosed "Cost Sharing Agreement" regarding the Centredale Manor Restoration Project Superfund Site (the "Site").

I have also been authorized to communicate the following on behalf of the Performing Respondents in response to your concerns regarding allocation after execution of the Cost Sharing Agreement by our respective clients:

1. The Performing Respondents agree to make a good faith effort to negotiate and participate in a nonbinding allocation process before the deadline for responding to a demand or request made by EPA on one or more of the Parties to conduct or fund the final remedial design and remedial action ("RD/RA") at the Site.

2. All payments toward Site cleanup will be subject to reallocation and will be credited toward any future allocation that the Parties may reach.

3. In the event that any Performing Respondent commences any action or proceeding to recover Site related costs from PRPs that are not signatories to the Cost Sharing Agreement, the Performing Respondent will use its best efforts to prevent institution of third party claims against signatories to the Cost Sharing Agreement, including but not limited to insertion of appropriate terms into any case management order.

I have also included a "Second Amendment to Tolling Agreement." This amendment tolls any applicable statutes of limitations and rules or doctrines of laches until 60 days after the

date on which EPA issues the Record of Decision ("ROD") for the Site. EPA has indicated that it does not expect to issue a ROD until late 2005 or early 2006. By copy of this letter, I am also circulating the Second Amendment to the remainder of the Payment Respondents for execution.

Please send me the executed Cost Sharing Agreement and Second Amendment to Tolling Agreement prior to the meeting scheduled for January 29.

Sincerely,

Jerome C. Muys, Jr. /CFB

Jerome C. Muys, Jr.

Enclosures

cc: David B. Graham, Esquire
Richard A. Sherman, Esquire
Steven M. McInnis, Esquire
Gregory Benik, Esquire
Howard Castleman, Esquire (via facsimile)
Colburn T. Cherney, Esquire (via facsimile)
Stuart R. Deans, Esquire (via facsimile)
Laurie Burt, Esquire (via facsimile)
Richard J. Welch, Esquire (via facsimile)
Ms. Linda H. Biagioni (via facsimile)
Warren Anthony Fitch, Esquire

**COST SHARING AGREEMENT**

This Agreement is entered into this 20th day of January, 2004, by and among Ciba Specialty Chemicals Corporation, for itself and Novartis Corporation, and Organic Dyestuffs Corporation ("Payment Respondents") and Brook Village Associates Limited Partnership, Centredale Manor Associates Limited Partnership, Emhart Industries, Inc., and New England Container Co., Inc. ("Performing Respondents") (collectively, the "Parties") whose authorized representatives have executed this Agreement.

WHEREAS, on September 11, 2003, the Performing Respondents entered into a Third Administrative Order on Consent for Removal Action ("AOC"), including a Statement of Work ("SOW"), for a Time Critical Removal Action relating to the Centredale Manor Restoration Project Superfund Site located in North Providence, Rhode Island ("the Site"); and

WHEREAS, on October 8, 2003, the United States Environmental Protection Agency ("EPA") issued to each of the Payment Respondents a Third Unilateral Administrative Order for Removal Action ("UAO"), including a SOW, for the same Time Critical Removal Action; and

WHEREAS, the Parties without admitting any fact, responsibility, fault, or liability in connection with the Site, intend to comply with their respective obligations under the AOC or UAO; and

WHEREAS, the Performing Respondents will mutually cooperate to perform the Work required under the AOC and SOW and have accordingly agreed to retain Loureiro Engineering Associates ("LEA") or other qualified consultant or engineer.

NOW, THEREFORE, in exchange for $1.00 and such other good and valuable consideration including the mutual promises and obligations of the Parties pursuant to this Agreement, the Parties agree as follows:

1. <u>Deposit and Use of Funds.</u>

The Performing Respondents have established an Escrow Account, administered by the law firm of Murtha Cullina LLP, for the purpose of funding the Work specified in the AOC and SOW. No later than January 28, 2004, Ciba Specialty Chemicals Corporation and Organic Dyestuffs Corporation shall each deliver a check in the amount of $35,000 to the Escrow Agent and the Escrow Agent shall immediately deposit the checks in the Escrow Account. Checks shall be made payable to Murtha Cullina LLP and include a notation that the funds are for the "Third EPA Removal Order Escrow Account for the Centredale Manor Restoration Project Superfund Site" or similar description. Checks shall be delivered to the Escrow Agent at the following address: Murtha Cullina LLP c/o Howard J. Castleman, Esq., 99 High Street, Boston, MA 02110. The Performing Respondents shall authorize Murtha Cullina, LLP as Escrow Agent to distribute available funds in the Escrow Account for payments of LEA invoices, or for other valid demands for payment to accomplish the obligations of the Performing Respondents. In the event that, as of the date the EPA approves the Work performed under the AOC, the Escrow Funds have not been fully expended, the Performing Respondents shall authorize the Escrow Agent to return the remainder of the Escrow

Funds to each of the Performing Respondents in proportion to the amount of the Performing Respondents' total contribution attributable to each Performing Respondent under this Agreement.

2. Confidentiality.

2.1 Shared Information. From time to time, the Parties may elect to disclose or transmit to each other, such information as each Party, counsel or technical consultant retained for the Party deems appropriate for the sole and limited purpose of coordinating activities that are necessary and proper to carry out the purposes of this Agreement. Shared information may be disclosed to or transferred among the Parties orally or in writing or by any other appropriate means of communication. The Parties intend that no claim of work product privilege or other privilege be waived by reason of participation or cooperation pursuant to this Agreement.

2.2 Preservation of Privilege. Information disclosed by the Parties to counsel appointed to perform specified work may be disclosed to any other Party, and each Party hereby expressly consents to treat such disclosure to it as being for the sole purpose of effectuating the purposes of this Agreement. Such disclosure shall not be deemed a waiver of the attorney-client privilege, work product immunity or any other privilege. Each Party shall take all necessary and appropriate measures to ensure that any person who is granted access to any shared information or who participates in the Work or who otherwise assists any counsel or other technical consultant in connection with this Agreement, is familiar with the terms of this Agreement and complies with such terms as they relate to the duties of such person.

The parties intend by this Section to protect from disclosure all confidential information and documents shared among the Parties or between any Party and LEA or any other technical consultant hired to perform services pursuant to this Agreement to the greatest extent permitted by law regardless of whether the sharing occurred before execution of this Agreement and regardless of whether the writing or document is marked "Confidential."

2.3 Survival. The confidentiality obligations of the Parties under this Section shall remain in full force and effect and shall survive the termination of this Agreement. The provisions of this Section shall not apply to information which is now or hereafter becomes public knowledge without violation of this Agreement or which is sought and obtained from a Party pursuant to applicable discovery procedures and not otherwise protected from disclosure.

3. Successors and Assigns. This Agreement shall be binding upon the successors and assigns of the Parties.

4. Effective Date. The effective date of this Agreement shall be the date first stated above.

5. Severability. If any provision of this Agreement is deemed invalid or unenforceable, the balance of this Agreement shall remain in full force and effect.

6. Entire Agreement. This Agreement constitutes the entire understanding and agreement of the Parties with respect to the subject matter hereof and supercedes all prior understandings and agreements of the Parties with respect to the specific matters addressed herein.

7. Separate Documents. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

8. Nature of Agreement. Nothing in this Agreement shall be deemed to create a partnership or joint venture and/or principal and agent relationship between or among the Parties.

9. Denial of Liability. In complying with the AOC or UAO, the Parties do not admit that they are liable parties under CERCLA § 107(a), 42 U.S.C. § 9607(a), and do not admit to any liability for removal, remedial, or other response costs relating to the Site under CERCLA, 42 U.S.C. §§ 9601 *et seq.*, or under any applicable federal or state law. The parties expressly reserve their respective rights of contribution under CERCLA § 113, 42 U.S.C. § 9613, and state law against each other and against any other person. This Agreement does not and will not constitute a precedent for allocation of liability among the Parties.

This Agreement is executed as of the date set forth above.

CIBA SPECIALTY CHEMICALS CORPORATION, for itself and NOVARTIS CORPORATION

By________________________

CENTREDALE MANOR ASSOCIATES LIMITED PARTNERSHIP

By________________________

ORGANIC DYESTUFFS CORP.

By________________________

EMHART INDUSTRIES, INC.

By________________________

BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP

By________________________

NEW ENGLAND CONTAINER CO., INC.

By________________________

# EXHIBIT B

**COST SHARING AGREEMENT**

This Agreement is entered into this 28th day of August, 2003, by and among American Mineral Spirits Company, The Original Bradford Soap Works, Inc., CNA Holdings, Inc., Cranston Print Works Co., Sequa Corp., and Teknor Apex Company ("Payment Respondents") and Brook Village Associates Limited Partnership, Centredale Manor Associates Limited Partnership, Emhart Industries, Inc., and New England Container Co., Inc., ("Performing Respondents") (collectively, the "Parties") whose authorized representatives have executed this Agreement.

WHEREAS, on August 25, 2003, the United States Environmental Protection Agency ("EPA") issued to each of the Parties a Third Administrative Order on Consent for Removal Action ("Order"), including a Statement of Work ("SOW"), for a Time Critical Removal Action relating to the Centredale Manor Restoration Project Superfund Site located in North Providence, Rhode Island ("the Site"); and

WHEREAS, the Parties have executed the Order regarding capping, drainage construction work and related activities; and

WHEREAS, the Parties without admitting any fact, responsibility, fault, or liability in connection with the Site, intend to comply with their respective obligations under the Order; and

WHEREAS, the Performing Respondents will mutually cooperate to perform the Work required under the Order and SOW and have accordingly agreed to retain Loureiro Engineering Associates ("LEA") or other qualified consultant or engineer.

NOW, THEREFORE, in exchange for $1.00 and such other good and valuable consideration including the mutual promises and obligations of the Parties pursuant to this Agreement, the Parties agree as follows:

1. Deposit and Use of Funds.

The Performing Respondents shall establish an Escrow Account, to be administered by the law firm of Murtha Cullina LLP, for the purpose of funding the Work specified in the Order and SOW. No later than three days before the Effective Date of the Order, the Payment Respondents shall deliver checks in the amount of $35,000 each and collectively, $210,000 to the Escrow Agent and the Escrow Agent shall immediately deposit the checks in the Escrow Account. Checks shall be made payable to Murtha Cullina LLP and include a notation that the funds are for the "Third EPA Removal Order Escrow Account for the Centredale Manor Restoration Project Superfund Site" or similar description. Checks shall be delivered to the Escrow Agent at the following address: Murtha Cullina LLP c/o Howard J. Castleman, Esq., 99 High Street, Boston, MA 02110. The Performing Respondents shall authorize Murtha Cullina, LLP as Escrow Agent to distribute available funds in the Escrow Account for payments of LEA invoices, or for other valid demands for payment to accomplish the obligations of the Performing Respondents under the Order. In the event that, as of the date the EPA approves the Work

performed under the Order, the Escrow Funds have not been fully expended, the Performing Respondents shall authorize the Escrow Agent to return the remainder of the Escrow Funds to each of the Performing Respondents in proportion to the amount of the Performing Respondents' total contribution attributable to each Performing Respondent under this Agreement.

2. Confidentiality.

2.1 Shared Information. From time to time, the Parties may elect to disclose or transmit to each other, such information as each Party, counsel or technical consultant retained for the Party deems appropriate for the sole and limited purpose of coordinating activities that are necessary and proper to carry out the purposes of this Agreement. Shared information may be disclosed to or transferred among the Parties orally or in writing or by any other appropriate means of communication. The Parties intend that no claim of work product privilege or other privilege be waived by reason of participation or cooperation pursuant to this Agreement.

2.2 Preservation of Privilege. Information disclosed by the Parties to counsel appointed to perform specified work may be disclosed to any other Party, and each Party hereby expressly consents to treat such disclosure to it as being for the sole purpose of effectuating the purposes of this Agreement. Such disclosure shall not be deemed a waiver of the attorney-client privilege, work product immunity or any other privilege. Each Party shall take all necessary and appropriate measures to ensure that any person who is granted access to any shared information or who participates in the Work or who otherwise assists any counsel or other technical consultant in connection with this Agreement, is familiar with the terms of this Agreement and complies with such terms as they relate to the duties of such person.

The parties intend by this Section to protect from disclosure all confidential information and documents shared among the Parties or between any Party and LEA or any other technical consultant hired to perform services pursuant to this Agreement to the greatest extent permitted by law regardless of whether the sharing occurred before execution of this Agreement and regardless of whether the writing or document is marked "Confidential."

2.3 Survival. The confidentiality obligations of the Parties under this Section shall remain in full force and effect and shall survive the termination of this Agreement. The provisions of this Section shall not apply to information which is now or hereafter becomes public knowledge without violation of this Agreement or which is sought and obtained from a Party pursuant to applicable discovery procedures and not otherwise protected from disclosure.

3. Additional Parties. Parties agree that any entity not a Party to this Agreement at the Effective Date of this Agreement ("New Party") may subsequently enter into this Agreement on such terms as the New Party and Performing Respondents' may agree so long as said New Party is obligated to pay not less than $30,000. Any New Party shall be bound by all of the terms of this Agreement.

4. Reimbursement to the Payment Respondents. The first $30,000 deposited into the Escrow Account or otherwise paid by the first New Party that received a PRP Notice Letter and EPA's May 5, 2003 request to participate in the Order and/or is subject to an EPA cooperation and

participation order, shall be immediately distributed in the amount of $5,000 each to the Payment Respondents after the $210,000 is deposited into the Escrow Account by the Payment Respondents pursuant to paragraph 3 and the Order. The Performing Respondents shall authorize Murtha Cullina, LLP as Escrow Agent to pay these funds promptly to the Payment Respondents.

5. Successors and Assigns. This Agreement shall be binding upon the successors and assigns of the Parties.

6. Effective Date. The effective date of this Agreement shall be the date first stated above.

7. Termination. This Agreement shall terminate and have no further effect upon completion of the Work under the Order or the distribution of $30,000 from the Escrow Account to the Payment Respondents, if any, pursuant to paragraph 4, whichever comes first. This Agreement shall terminate and have no further effect for the Performing Respondents and any New Party upon completion of the Work under the Order.

8. Severability. If any provision of this Agreement is deemed invalid or unenforceable, the balance of this Agreement shall remain in full force and effect.

9. Entire Agreement. This Agreement constitutes the entire understanding and agreement of the Parties with respect to the subject matter hereof and supercedes all prior understandings and agreements of the Parties with respect to the subject matter hereof.

10. Separate Documents. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11. Nature of Agreement. Nothing in this Agreement shall be deemed to create a partnership or joint venture and/or principal and agent relationship between or among the Parties.

12. Denial of Liability. In complying with the Order, the parties do not admit that they are liable parties under CERCLA § 107(a), 42 U.S.C. § 9607(a), and do not admit to any liability for removal, remedial, or other response costs relating to the Site under CERCLA, 42 U.S.C. §§ 9601 *et seq.*, or under any applicable federal or state law. The parties expressly reserve their respective rights of contribution under CERCLA § 113, 42 U.S.C. § 9613, and state law against each other and against any other person. This Agreement does not and will not constitute a precedent for allocation of liability among the Parties.

This Agreement is executed as of the date set forth above.

AMERICAN MINERAL SPIRITS COMPANY

By_______________________________

THE ORIGINAL BRADFORD SOAP WORKS, INC.

By_______________________________

This Agreement is executed as of the date set forth above.

AMERICAN MINERAL SPIRITS COMPANY

By_______________________

THE ORIGINAL BRADFORD SOAP WORKS, INC.

By_______________________ 9/1/03

This Agreement is executed as of the date set forth above.

AMERICAN MINERAL SPIRITS COMPANY

By____________________

THE ORIGINAL BRADFORD SOAP WORKS, INC.

By____________________

BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP,

By Howard L Castleman
Counsel for Brook Village Assoc. L.P.

CENTREDALE MANOR ASSOCIATES LIMITED PARTNERSHIP

By____________________

CNA HOLDINGS, INC.

By____________________

CENTREDALE MANOR ASSOCIATES L.P.
By its General Partners

CENTREDALE ASSOCIATES L.P.

By [signature]
John L. Marshall, III

Its General Partner

and

C/S HOUSING ASSOCIATES L.P.
By C/S Centerdale Corp.
Its General Partner

By ______________________
Paul Tryder

Its President

CENTREDALE MANOR ASSOCIATES L.P.
By its General Partners

CENTREDALE ASSOCIATES L.P.

By ______________________
John L. Marshall, III

Its General Partner

and

C/S HOUSING ASSOCIATES L.P.
By C/S Centerdale Corp.
Its General Partner

By ______________________
Paul Tryder

Its President

This Agreement is executed as of the date set forth above.

AMERICAN MINERAL SPIRITS COMPANY

By______________________________

THE ORIGINAL BRADFORD SOAP WORKS, INC.

By______________________________

BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP

By______________________________

CENTREDALE MANOR ASSOCIATES LIMITED PARTNERSHIP

By______________________________

CNA HOLDINGS, INC.

By [signature]

CRANSTON PRINT WORKS CO.

By [signature]
General Counsel

EMHART INDUSTRIES, INC.

By________________________

NEW ENGLAND CONTAINER CO., INC.

By________________________

SEQUA CORP.

By________________________

TEKNOR APEX COMPANY

By________________________

CRANSTON PRINT WORKS CO.

By______________________________

EMHART INDUSTRIES, INC.

By Linda A Biagioni

NEW ENGLAND CONTAINER CO., INC.

By______________________________

SEQUA CORP.

By______________________________

TEKNOR APEX COMPANY

By______________________________

CRANSTON PRINT WORKS CO.

By______________________________

EMHART INDUSTRIES, INC.

By______________________________

NEW ENGLAND CONTAINER CO., INC.

By______________________________

SEQUA CORP.

By______________________________

TEKNOR APEX COMPANY

By______________________________

CRANSTON PRINT WORKS CO.

By____________________________

EMHART INDUSTRIES, INC.

By____________________________

NEW ENGLAND CONTAINER CO., INC.

By____________________________

SEQUA CORP.

By [signature]
Counsel for Sequa Corporation

TEKNOR APEX COMPANY

By____________________________

CRANSTON PRINT WORKS CO.

By______________________________

EMHART INDUSTRIES, INC.

By______________________________

NEW ENGLAND CONTAINER CO., INC.

By______________________________

SEQUA CORP.

By______________________________

TEKNOR APEX COMPANY

By Jonathan D. Cain

# EXHIBIT C

**TOLLING AGREEMENT**

WHEREAS, Brook Village Associates Limited Partnership, Centredale Manor Associates Limited Partnership, Emhart Industries, Inc., and New England Container Company (hereinafter referred to as the "Performing Parties") have identified persons and entities that they believe are potentially responsible parties ("PRPs") within the meaning of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §9601 *et seq.* ("CERCLA"), with respect to the Centredale Manor Restoration Project Superfund Site in North Providence, Rhode Island (hereinafter referred to as the "Site"), including, but not limited to, Teknor Apex Company (hereinafter referred to as "Teknor Apex"); and,

WHEREAS, the Performing Parties contend that the aforesaid persons and entities, including, but not limited to, Teknor Apex, are liable for response costs incurred by the Performing Parties in connection with the Site; and,

WHEREAS, Teknor Apex denies that it is responsible for any costs of response related to the Site; and,

WHEREAS, the Performing Parties and Teknor Apex wish to defer any litigation of claims by the Performing Parties regarding the Site in order to attempt to resolve those claims without litigation, but without thereby waiving or altering any of the claims or defenses available to them, in accordance with the provisions set forth below;

NOW THEREFORE, the Performing Parties and Teknor Apex stipulate and agree as follows:

1. Any applicable statutes of limitations and rules or doctrines of laches will be tolled from and including June 6, 2003 through and including April 8, 2004 (the "Tolling Period"), and thus the Tolling Period will not be included in computing the deadline under any statute of limitations that may be applicable to the commencement of any action by the Performing Parties under CERCLA or state law, with respect to any and all claims, causes of action, and defenses which either party to this Agreement has, may have, or may assert against the other party arising out of, relating to, or connected with the Site (an "Action"). The Performing Parties and Teknor Apex agree not to assert, plead or raise in any fashion, in any such Action hereafter initiated or maintained by the Performing Parties, whether by pleading, motion or otherwise, any claim, defense or avoidance based on: (a) the running of any statute of limitation during the Tolling Period; or (b) laches or other principle concerning the timeliness of commencing a civil action based upon the failure to assert such claims, causes of actions or defenses during the Tolling Period

2. During the Tolling Period, any claim, defense, contention, argument, privilege or legal right that existed prior to the Effective Dates will be preserved, completely and without limitation.

3. Nothing contained in this Agreement shall be construed as an admission by the Performing Parties or Teknor Apex of any liability with respect to any claim, cause of action or defense.

4. The Performing Parties and Teknor Apex will not file an Action or otherwise commence litigation to recover response costs or seek other relief related to the Site during the Tolling Period, *provided that*, in order to assure adequate time in which to commence an Action if the Performing Parties and Teknor Apex do not resolve their claims and defenses during the Tolling Period, on or after March 8, 2004, any Performing Party or Teknor Apex may file an Action against the other on or after the sixth day following delivery of written notice by facsimile transmission to the other of its intention to do so.

5. Nothing in this Tolling Agreement shall be construed as a waiver or release of any claim or defense by any of the parties to this Agreement, except as expressly provided for in paragraph 1 above.

6. This Agreement shall take effect immediately upon execution by the parties. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the party on whose behalf it is indicated that the person is signing.

7. This Agreement is binding upon, and accrues to the benefit of, each of the Performing Parties and Teknor Apex, and their successors in interest. The Agreement may not be assigned by any party without the prior written approval of the other parties.

8. This Agreement may be amended only by written instrument signed by the parties stating that it is an amendment to this Agreement. No other statement, written or oral, other than appearing in this instrument or an amendment to this instrument, is part of this Agreement.

BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP

By: Howard Castleman /LAF

Title: Counsel

Date: 1-8-04

CENTREDALE MANOR ASSOCIATES LIMITED PARTNERSHIP

By: Laurie Burt /LAF

Title: Counsel

Date: 1-8-04

EMHART INDUSTRIES, INC.

By: Jerome C. Muys, Jr. /LAF

Title: Counsel

Date: 1-8-04

NEW ENGLAND CONTAINER COMPANY

By: Stuart Deans /LAF

Title: Counsel

Date: 1-8-04

TEKNOR APEX

By: [signature]

Title: Counsel for Teknor Apex Company

Date: Dec. 29, 2003